**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JENNIFER L. SNYDER,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | Civil No. 09-0461(NLH)<br><br><br><br>OPINION |

**APPEARANCES:**

Paul G. Enterline
113 South Race Street
PO Box 826
Georgetown, DE 19947-0826

   *On behalf of plaintiff*

David Weiss, United States Attorney
Patricia A. Stewart, Special Assistant United
States Attorney
Office of the General Counsel
Social Security Administration
P.O. Box 41777
Philadelphia, Pennsylvania 19101

Eric P. Kressman
Regional Chief Counsel, Region III
Stephen M. Ball
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration

   *On behalf of defendant*

**HILLMAN**, District Judge[1]

---

[1] Designated for service in the District of Delaware pursuant to the provisions of 28 U.S.C. § 292(b) as ordered by the Honorable Anthony J. Scirica, Chief Judge of the United States Court of Appeals for the Third Circuit.

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, January 26, 2006. For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings as instructed herein.[2]

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits claiming that as of January 26, 2006 the pain and injuries related to two automobile accidents, as well as her mental condition, render her completely disabled and unable to work. Prior to that time, Plaintiff worked for twenty years for Kraft Foods as a machine operator. After a hearing, an ALJ determined

---

[2]Plaintiff is eligible to receive benefits until December 31, 2011. (R. at 108.) Thus, if the outcome of the reconsideration of Plaintiff's present benefits application again results in a denial of benefits for the period of January 26, 2006 through May 7, 2008, Plaintiff may make a new application for benefits should her condition change, or should she experience new impairments following the ALJ's decision.

that Plaintiff was not disabled. Plaintiff appealed the decision, and the Appeals Council affirmed. Plaintiff now seeks this Court's review.

**II. DISCUSSION**

    **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical

4

evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience,

engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability because a short period of employment in a modified capacity was not sufficient to qualify as "substantial gainful activity." (Step One). The ALJ next found that Plaintiff's cervical and lumbar degenerative disc disease impairments were severe (Step Two).[3]

---

[3] In Plaintiff's appeal brief, Plaintiff contends that the ALJ erred by not considering her claim that she was also disabled due to her carpal tunnel syndrome, obesity, depression and headaches. It does not appear that Plaintiff applied for disability benefits based on these conditions individually. The ALJ, however, nonetheless considered Plaintiff's depression as a stand-alone disability, and determined it to be a non-severe impairment. As discussed in more detail below, how the ALJ arrived at this determination is in error, and it must be

The ALJ then found that even though Plaintiff's impairments did not meet the medical equivalence criteria (Step Three), she was not capable of performing past relevant work (Step Four). The ALJ found, however, that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light level exertional work, which jobs are in significant numbers in the national economy (Step Five).

Plaintiff presents four arguments for review: (1) the ALJ erred in the hypothetical posed to the vocational expert ("VE"); (2) the ALJ improperly rejected all the medical evidence in the case and came to his own conclusion regarding Plaintiff's condition; (3) the ALJ did not properly evaluate all of Plaintiff's conditions; and (4) the ALJ failed to consider Plaintiff's consistent, single-employer work history.

As detailed below, the Court finds that the ALJ erred in several aspects of his analysis. As further discussed below, even though the final outcome of the ALJ's decision may not ultimately change, several errors require remand and further consideration. The basis for remand are as follows:

> **1. The ALJ erred in his analysis of Plaintiff's mental condition.**

The ALJ determined that Plaintiff's depression did not

---

reconsidered by the ALJ in accordance with the Court's instruction. With regard to the other alleged conditions, see *infra* page 10 and note 5.

8

qualify as a "severe" disabling condition, which is required for the finding of total disability. He made that decision because Elizabeth Wallick, a licensed professional counselor who diagnosed Plaintiff as having a major depression disorder with marked to extreme functional limitations as of January 1, 2008, is not an acceptable medical source according to the Social Security regulations. (R. at 14.) He also found Ms. Wallick's assessment to be highly subjective and inconsistent. (Id.) The ALJ noted that even though her primary care physician prescribed Plaintiff Prozac, no other medical source diagnosed Plaintiff with depression, or otherwise showed psychological restrictions concerning her ability to perform activities of daily living, to sustain social functioning, or to maintain concentration, persistence or pace. (Id.) The ALJ thus determined that Plaintiff's depressive symptomatology only had a minimal impact on her ability to perform basic work activities for a twelve month period or more, and that her limitations due to her mental condition during the relevant time period (January 26, 2006 through the date of the decision on May 7, 2008) were only mild. (Id.)

Although the ALJ is correct that there is a dearth of medical evidence concerning Plaintiff's psychological condition, and although the ALJ may ultimately be correct that Plaintiff's mental disorder may only mildly affect her ability to function in

9

life and work, the ALJ erred in this assessment in two ways.

First, to the extent that Plaintiff does not claim that her depression was an independently disabling condition, the ALJ was required to assess her mental condition in combination with her other impairments. See 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.").

In this case, the ALJ did not consider Plaintiff's mental condition in his analysis of Plaintiff's other physical conditions, and instead viewed her mental impairment separate and independent from her other impairments. Further, the ALJ failed to provide any discussion on how Plaintiff's mental impairment contributed--or not--to her inability to work, when added to her physical impairments. The ALJ's failure to do this constitutes reversible error. See Diaz v. Commissioner of Social Sec., 577

F.3d 500, 504-05 (3d Cir. 2009) (explaining that "absent analysis of the cumulative impact of [one of the Plaintiff's impairments] and other impairments on her functional capabilities, we are at a loss in our reviewing function"); Torres v. Commissioner of Social Security, 279 Fed. Appx. 149, 152 (3d Cir. 2008) (stating that although the ALJ explained why the plaintiff's impairments did not qualify individually, he failed to conduct a proper analysis to explain why all of plaintiff's impairments--diabetes, Hepatitis C, back problems, headaches, chronic bronchitis, left-eye blindness, glaucoma, depression, anxiety, bipolar disorder, and personality disorder--in combination were not severely disabling).

Alternatively, to the extent that Plaintiff claims that her depression was singularly disabling, the ALJ was required to base that decision on a medical assessment from a qualified psychiatrist or psychologist. In his decision, the ALJ discredits Plaintiff's social worker, who provides the bulk of medical evidence concerning Plaintiff's mental condition. The ALJ discredits the social worker because she cannot be considered an acceptable medical source, see 20 C.F.R. § 404.1616, and even if she were such a source, her diagnosis and assessment of Plaintiff's functioning is inconsistent and not supported by Plaintiff's own testimony regarding her abilities.

At first blush, this finding does not appear to be

11

problematic, as the burden is on Plaintiff to prove that her mental condition is severe and has lasted or is expected to last for a continuous period of at least twelve months. It is axiomatic that without acceptable medical proof as to the severity and duration of her mental impairment, it cannot be found that Plaintiff has a qualifying impairment. A problem arises here, however, because the ALJ concluded that Plaintiff's mental condition is "mild" without *any* creditable medical evidence to support that conclusion.

An ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000). In this case, although the bulk of Plaintiff's evidence concerning her mental condition is provided by a licenced professional counselor who does not meet the qualifications of a qualified psychologist under the regulations, there is no evidence to support the ALJ's conclusion that Plaintiff's mental state only mildly affects her daily living, social functioning and ability to work. Such a determination appears to be the ALJ's own speculation and lay opinion. See, e.g., Bordes v. Commissioner of Social Sec., 235 Fed. Appx. 853, 864 (3d Cir. 2007) (discussing a similar situation where the basis for the

ALJ's decision was his lay opinion rather than medical evidence). Indeed, the only available conclusion that can be gleaned from the ALJ's recitation of Plaintiff's medical records, which shows the lack of proper medical support, is that her professed mental impairment does not affect her in any way.[4] Therefore, in a somewhat perverse result, the ALJ's determination on this issue must be reversed, because the ALJ's assessment of the severity of Plaintiff's mental impairment is not based on any evidence, let alone substantial evidence.

### 2. **The ALJ erred in his assessment that Plaintiff's physical impairments and pain did not render her disabled during the relevant time period.**

Regardless of the issues concerning Plaintiff's mental impairment, the ALJ also erred in his analysis regarding Plaintiff's capacity to work while experiencing severe lumbar and cervical physical impairments and pain. Plaintiff's alleged disabling conditions occurred as a result of two car accidents. Plaintiff was involved in the first accident on November 11, 2005, and then had a second accident on October 25, 2007. It is the progressive and cumulative result of both accidents that Plaintiff claims causes her to be completely disabled and unable

---

[4] The ALJ notes that Plaintiff's treating primary care physician prescribed Plaintiff Prozac, but does not indicate when Plaintiff began such treatment, or any other information regarding this treatment. (R. at 14.) As this medical evidence is provided by an acceptable treating source, the ALJ must do more to explain how this evidence does not support a finding of a severe disability.

to work.

After reviewing the medical records, considering Plaintiff's testimony and credibility, and posing a hypothetical to the VE, the ALJ found that Plaintiff retained the residual functional capacity to perform light exertional work, such as a mail room clerk and photocopy machine operator. (R. at 19, 20.) The primary basis for the ALJ's decision was that "the record fails to provide objective medical evidence that the claimant's impairments are as severe as her hearing testimony suggests." (R. at 18.) The ALJ found the opinion of Plaintiff's physician, Dr. Irene Mavrakakis, who treated her for pain, to be not creditable with regard to Plaintiff's RFC (in May 2008, Dr. Mavrakakis found Plaintiff incapable of performing any work). (Id.) The ALJ also discounted the opinions of the state agency medical consultants, who found that Plaintiff was only capable of light sedentary work. (Id.) The ALJ noted inconsistencies in her testimony in the hearing before him compared with statements she made to her doctors, (R. at 17), and he concluded, "While the claimant may experience episodic exacerbations of impairment symptomatology, the record fails to show the claimant having required any continuing critical active treatment or significant office care throughout the relevant period in question, other than for routine medical monitorization and maintenance." (R. at 18).

14

The ALJ committed two errors in his analysis that cause his decision to be unsupported by substantial evidence.  The first problem is that he conflates Plaintiff's medical records and testimony concerning the two accidents, which occurred two years apart.  For example, in discrediting Dr. Mavrakakis, the ALJ stated that "her relatively recent May, 2008 assessment is inconsistent with Dr. Eric Schwartz's earlier assessment that the claimant could return to 'light to medium duty' work status." (R. at 19, citing Ex. 7F at R. 224.)  Although that statement appears to be true, any inconsistency may be due to the fact that Dr. Schwartz's "earlier assessment" occurred on August 10, 2006, prior to the second car accident, while Dr. Mavrakakis' assessment occurred after the second car accident.  Simply because Plaintiff's doctor determined that she was capable of light or medium work in August 2006 does not mean that a subsequent car accident could have no impact on her capacity to work from that point on.

Another example is the ALJ's review of Plaintiff's statements concerning her daily life activities.  The ALJ lists all of the activities that Plaintiff reported she could do after the first accident, but then does not similarly assess her abilities after her second car accident.  (R. at 17.)  Despite that analysis, the ALJ concluded that "the level of activity as reported does not equate with the severity of impairment as

15

alleged." (Id.)

Throughout his decision, the ALJ similarly does not differentiate between the two accidents, and appears to often compare post-first accident medical records with post-second accident medical records. Although it appears that the ALJ's determination that Plaintiff is not disabled and is capable of light work is supported by substantial evidence as to the period following the first accident, the ALJ's failure to similarly support his conclusion for the period following the second accident causes his ultimate determination to be unsupported. It may be that the medical records reveal that the second accident did not impact Plaintiff's ability to perform light work, but the ALJ must explain what evidence supports that conclusion. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Compounding this problem with the ALJ's analysis of Plaintiff's RFC is the ALJ's substitution of his own judgment for the opinions of all the medical sources. As discussed, the ALJ discredited Plaintiff's treating physician Dr. Mavrakakis. This by itself is not problematic, as a treating physician is entitled to controlling weight, but an ALJ is not required to blindly follow a treating physician's conclusions, particularly with regard to RFC. Brownawell v. Commissioner Of Social Security, 554 F.3d 352, 355 (3d Cir. 2008) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d

16

422, 429 (3d Cir. 1999)))("An ALJ should give 'treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' While contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'"); 20 C.F.R. § 404.1527(e) (explaining that the issue of the RFC assessment is reserved for the Commissioner and a physician's opinion thereon is not entitled to any special significance). Thus, aside from the issue of conflating the medical records, the fact that the ALJ did not follow Dr. Mavrakakis's opinion that Plaintiff's is totally disabled is not itself an automatically reversible error.

    The ALJ, however, is required to provide contradictory medical evidence to reject a treating physician's opinion. The ALJ not only failed to do this, he further rejected the agency's own medical opinions. The ALJ stated, "[I]n having considered the assessments offered by State agency medical consultants who opined that the claimant is capable of performing a limited range of sedentary level exertional work, the undersigned notes that while the assessments may have been reasonable based on the evidence available at the time of submittal (sic), additional evidence received at the hearing level suggest that the claimant

17

is less limited than originally thought." (R. at 19.) This statement is troubling.

The agency medical examiner evaluations were performed on September 5, 2007 (R. at 277), September 16, 2007 (R. at 279), and December 11, 2007 (R. at 323). Two were performed before the second accident, and the second was performed after the second accident. All three determined that Plaintiff was capable of sedentary work, rather than the more-capable light work level. After reviewing the record as a whole, we are unable to discern what "additional evidence received at the hearing level" serves to contradict these findings.

Here, as we noted before, it appears the ALJ again substituted his own lay judgment as to Plaintiff's medical conditions. The ALJ discredited Plaintiff's own testimony, her treating physician's findings, and the state agency findings. It is in the province of the ALJ to determine Plaintiff's RFC, but that determination must be supported by substantial evidence. See 20 C.F.R. §§ 404.1527(e)(1)-(2), 416.927(e)(1)-(2). The ALJ has not pointed to any evidence to support his findings.

Therefore, the ALJ's ultimate determination that as of May 2008, Plaintiff retained the RFC to perform light work is unsupported. As mentioned above, although it may be that the evidence does not support a finding that Plaintiff was disabled following the first car accident, or that even following the

second accident she was capable of performing some level of full-time employment, because the ALJ's decision as to Plaintiff's RFC was based on an improper analysis of the medical records, the disregard of both Plaintiff's treating physician and state agency consultants' opinions, and the substitution of his own lay judgment, Plaintiff's case must be remanded for further consideration.[5]

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is not supported by substantial evidence. Even though the ALJ may ultimately come to the same conclusion upon reconsideration of Plaintiff's application, the ALJ must support his decision with medical evidence rather than his own lay opinions. Accordingly, the decision of the ALJ is reversed, and the matter shall be remanded. An accompanying Order will be issued.

Date: June 11, 2010                s/ Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.

---

[5] Because the matter will be remanded to the ALJ to completely reevaluate Plaintiff's disability benefits application consistent with the above direction, the Court does not need to address Plaintiff's other arguments on appeal. Presumably, the ALJ will pose a proper hypothetical to the VE following the reanalysis of Plaintiff's medical records and consideration of all her ailments in combination. Moreover, it is presumed that the ALJ will specifically reference his consideration of Plaintiff's work history. Taybron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981) (citation omitted) (explaining that "when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility").